MISSOURI PAC. RY. CO. *v.* TEXAS & PAC. RY. CO., (BROOKS, Intervenor.)

(*Circuit Court, E. D. Louisiana.* May 25, 1889.)

MASTER AND SERVANT—NEGLIGENCE.

The intervenor was a brakeman on defendant's road, and one of his duties was to tie the bell-cord running from the locomotive to the cars, after the locomotive was attached to the train. While discharging that duty the train was suddenly started and he was thrown down and injured. As to whether the conductor had taken charge of the train and ordered it to be started the evidence was in conflict; the intervenor himself, a switchman, and another witness testifying that the conductor was in charge. This was corroborated by the conductor's admissions and defendant's failure to account for the absence of the engineer in charge of the locomotive. For the defendant two of its employés testified to the contrary, and they were corroborated by intervenor's admissions, and by his failure to explain why he had not attached the cord while the conductor was receiving his orders, as he might have done. *Held,* that the weight of evidence was with the intervenor.

In Equity. Intervention of Brooks on a claim for damages.

*Rice & Armstrong*, for intervenor.
*Howe & Prentiss*, for defendant.

PARDEE, J.  The intervenor, Brooks, claims damages against the receiver in this case, on the ground that while in receiver's employ as a brakeman or porter on passenger trains, and while in the discharge of his duty, he was injured through the negligence of the receiver.  It is claimed that it was a part of his (intervenor's) duty, in making up the train, to fasten the bell-cord which runs from the locomotive to the cars in rear; and that, on the morning of the 8th of August, 1888, while the train was making up at Gouldsborough, he was engaged in this duty, and was standing on the top of a tool-box at the rear end of the tender tying a bell-cord between the baggage-car and the tender, when, through the negligence of the conductor, the train was started before he was aware of it, which caused him to lose his balance, whereat he stepped or jumped to the platform of the car, alighting on some pieces of ice left thereon, causing him to slip and fall to the ground, by which fall his elbow was broken and permanently injured.  The master reports that, as to the fall of Brooks and the injury he received, there is no conflict of testimony; that at the time he was engaged in the performance of his duty; that the start of the train caused him to lose his balance and fall; that the train was started improperly by the conductor in charge thereof, who represented the receiver as a vice-principal, for whose negligence the receiver in law is responsible to other employés on the train; and that for his injuries the intervenor is entitled to recover the sum of $2,500 damages.  To the master's report counsel for the defendant filed exceptions as follows:

"*First.* Said defendant excepts to the finding that the facts establish a presumption of negligence against the receiver.  *Second.* It excepts to the finding that the claimant is entitled to recover the amount allowed him; the evidence not showing that the alleged injuries are a legal basis for any recovery by him.  *Third.* It avers that in any event the claimant cannot recover, because he contributed by his negligence to the accident complained of.  *Fourth.* It avers that in any event the damages allowed are excessive, and should be reduced."

By agreement among counsel the report and the exceptions are submitted to the court on briefs.

In their brief counsel for the defendant railway company make practically two points: (1) That in the conflicting state of the evidence the intervenor has failed to make out his case with reasonable certainty; and (2) the amount of damages allowed by the master is excessive.  An examination shows that the evidence in the case is conflicting and irreconcilable.  The theory of the intervenor is that the conductor of the train started the train before the intervenor had time to perform the conceded duty of tying the bell-cord between the locomotive and the first car behind, and while intervenor was performing that duty, and that such starting was the direct cause of the intervenor's injury.  If this be true, it would appear that the intervenor has a clear right to recover.  It is

supported by the testimony of the intervenor himself, one Spicer, a switchman, and the boy, Warner,. who claims to have been in the car second behind the locomotive, and to have been looking out of the window. at the time that the intervenor met with his accident; and is corroborated by the proved admissions of the conductor, and the failure of the defendant to produce or account for the engineer in charge of the outgoing locomotive. The theory of the defendant is that the intervenor met with his accident while the train was being made up in the yard of the company at Gouldsborough, and while the conductor was absent at the dispatcher's office to receive orders, or at least before he had taken charge of the train. The master has found that the intervenor's witnesses are to be believed, and that the main witnesses of the defendant company are to be discredited.

The conclusion that I reach after a full examination of all the evidence is that the intervenor's evidence, supported as it is by the opinion of the master, preponderates in the case. At the same time I dissent *in toto* from the claim of the intervenor, apparently acquiesced in by the master, that the testimony of the two main witnesses, Nash and Cass, for the defendant, is collusive and false. The case shows that the ordinary way in which the business is done at Gouldsborough, after crossing the river on the ferry-boat, is for the conductor to go at once to the dispatcher's office, some distance up the yard, to obtain and receipt for orders; and that, while this is being done, the train is made up under the yard-master's orders, the cars composing the train are switched by a yard-engine to their proper places, and, when the train is made up, the engine that is to haul it is attached; it being the duty of the porter .or brakeman, as intervenor was, to attach and properly tie the bell-cord as soon as the outgoing engine is attached. The evidence of Nash and Cass is to the effect that the accident to the intervenor occurred before or at the time the outgoing engine was attached, and not after the train was fully made up and turned over by the yard-master to the conductor. It is corroborated by the fact that no explanation whatever is given as to what the intervenor was doing, and why he did not tie the bell-cord while the conductor was obtaining orders, and by the statement of the intervenor as to the manner in which he received his hurt, taken down by Dr. Kearney, in the presence of Dr. Postell, at Placquemine, where the intervenor was first examined by a surgeon; and it is further corroborated by the absence of any motive on the part of Cass and Nash to swear falsely,—the idea that motive is presumed because they were railroad employés being rejected as absurd.

The damages allowed are based upon the theory that the intervenor will never fully recover the use of his arm. The testimony on this subject is not sufficiently clear and conclusive. Of course it is hardly to be expected that, in the ordinary course of healing such an injury, it will be cured pending the investigation of the case, and in the determination of the amount of damages to be recovered from the railway, if the injury is permanent, the sum allowed by the master is not excessive; but, if otherwise, the sum of $1,500 is ample. The intervenor may have an

order recommitting the case to the special master to take additional expert medical evidence as to the permanency of intervenor's injury; or an order confirming the master's report as to the liability of the defendant company, allowing damages in the sum of $1,500, as he may elect, within five days from this date.